# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:    3:09cr15/LAC/EMT
                                                     3:12cv280/LAC/EMT

MARK HENRY PANTLE

_____/

## **REPORT AND RECOMMENDATION**

This cause is before the court upon Defendant's motion to vacate filed pursuant to 28 U.S.C. § 2255 (doc. 69), the Government's response in opposition thereto (doc. 71), and Defendant's reply and supplemental authority (docs. 75, 76, 78). The matter was referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has raised no issue requiring an evidentiary hearing, *see* Rule 8(a), Rules Governing Section 2255 Proceedings, and that the motion should be denied.

## I.    BACKGROUND

On February 17, 2009, a grand jury returned a one-count indictment, charging Defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (doc. 1).[1] In April 2009 Defendant's court-appointed counsel—Assistant Federal Public Defender ("AFPD") Randall Lockhart—filed a motion to suppress and an amended motion to suppress (docs. 20, 21). In the amended motion AFPD Lockhart sought suppression of the .38 caliber Colt revolver, which had been seized from a residence owned by Rocky Burk during the early morning hours of November 28, 2008 (doc. 21). He also sought suppression of statements made by Mr. Burk at the time the firearm was seized and "the subsequent identification of the firearm by the alleged victims"

---

[1] The firearm was identified in the indictment as a .38 caliber Colt revolver (doc. 1 at 2).

of an aggravated assault with a firearm, which assault occurred during the early morning hours of November 28, 2008, shortly prior to Defendant's arrest (*id.*).  After a hearing on Defendant's motion to suppress, the district court denied the motion (*see* docs. 23, 39).

On April 29, 2009, the Government filed a Notice of Intent to Introduce Evidence under Fed. R. Evid. 404(b), in which it advised Defendant of its intent to introduce at trial "facts supporting, and the actual judgment regarding," a conviction on January 21, 1997, for attempted assault in the first degree in the State of Alabama (doc. 24).  The Government contended that the facts of the Alabama offense were similar to the facts of the aggravated assault of November 28, 2008, and noted that during the Alabama incident Defendant actually shot another person (*id.*).  AFPD Lockhart filed a motion in limine, seeking to exclude the evidence identified by the Government in its Notice (doc. 27).  AFPD Lockhart also filed a second motion in limine, in which he sought to exclude any evidence "relating to defendant's alleged history and reputation for employing knives in physical altercations as well as any specific details relating to the defendant's alleged attempts to use (or use of) a knife during a physical altercation with potential government witness, Ricky Sullivan," which altercation occurred prior to Defendant's arrest at Mr. Burk's residence (doc. 28 at 1).[2]  After a combined hearing on both motions in limine (*see* doc. 29; doc. 56 at 4–14), the district court denied the motions as moot (*see* docs. 32 & 33 (both referencing the record of the proceedings, which proceedings occurred at the outset of Defendant's trial (*see* doc. 56 at 4–14)). In essence, and in short, the Government agreed to not elicit any testimony concerning knives or the prior assault in Alabama unless Defendant opened the door to such testimony, which agreement rendered moot the motions in limine (*see* doc. 56 at 4–14).

On May 5, 2009, following a two-day jury trial, Defendant was convicted as charged (*see* doc. 36).  On July 14, 2009, Defendant was sentenced to the statutory maximum term of 120-months imprisonment, followed by three years of supervised release, which term of imprisonment was well below the otherwise applicable guidelines range (docs. 41–43).  Defendant timely appealed (doc. 44), and on June 6, 2011, his conviction and sentence were affirmed by the Eleventh Circuit Court

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

of Appeals (doc. 65).  On January 20, 2012, the United States Supreme Court denied Defendant's petition for writ of certiorari (doc. 68).

Defendant timely filed his § 2255 motion in June 2012.  He asserts seven claims for relief, as follows:  four claims of ineffective assistance of trial counsel, one claim of ineffective assistance of appellate counsel, one "cumulative error" claim, and one claim in which he contends his 120-month sentence is fundamentally unfair in violation of the Fifth and Fourteenth Amendments of the United States Constitution (doc. 69).

II.     LEGAL STANDARDS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . .

or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim

if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); see also Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover

v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.* at 203.

Additionally, to establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

The Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).  Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.  His belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Finally, section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief." In order for the court to conduct a hearing on a disputed issue of fact, a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Within this framework, the court will review Defendant's claims, the first three of which will be grouped for discussion because they are related and factually intertwined.

III.  DISCUSSION

   A.  Ground One.  "Trial counsel was ineffective for failing to conduct an adequate pretrial and presentence investigation and for failing to properly consult and negotiate in regards to pleading guilty."

   B.  Ground Two.  "Trial counsel was ineffective for failing to put the Petitioner [sic] and the owner [Rocky Burk] on the stand during the suppression hearing to establish standing and that the police officer's [sic] were not invited into the residence to search and that the firearm was in fact discovered during a search rather than just by happenstance."

   C.  Ground Three.  "Trial counsel was ineffective for failing to renew and request reconsideration of his motion to suppress after a witness testified at trial in direct contradiction to material facts that the court relied on in denying the motion."

(doc. 69 at 7).

Defendant contends his trial counsel failed to conduct an adequate investigation prior to trial because he:  (1) failed to interview Rocky Burk, the homeowner of the house from which the firearm was seized; (2) failed to "research the applicable law in regards to the limits on the Cross Examination that [Defendant] would be subjected to if he testified during the Suppression Hearing, and whether that testimony could be used against him at trial"; and (3) failed to contact the Government and attempt to negotiate a fair plea agreement (doc. 69 at 17).  He also contends counsel:  (1) failed to convey "any [] plea offers from the Government if they had proposed one"; and (2) failed to discover Defendant's criminal history, which resulted in counsel's inability to advise Defendant of his guidelines range or provide proper advice regarding the decision to proceed to trial versus enter a plea (*id*. at 14, 20).  Defendant further contends AFPD Lockhart failed to advise him that he could enter of plea of guilty and still preserve his right to appeal the denial of his motion to suppress (doc. 69 at 14).

To place Defendant's claims in context, a review of portions of the testimony adduced at the hearing on Defendant's motion to suppress and at his trial is helpful.  At the motion to suppress hearing, the Government presented the testimony of Deputy Sheriffs Jeffrey Swanson ("Swanson") and Michael Milstead ("Milstead"), of the Escambia County Sheriff's Office (*see* doc. 55 at 3–56 (Swanson's testimony) & 57–90 (Milstead's testimony)[3].  Swanson testified that he responded to 9 Horn Street in Pensacola, Florida, at approximately 4:30 a.m. on November 28, 2008, due to a reported armed disturbance, and that Milstead arrived on scene at about the same time.  Swanson initially met with a male and a female (hereinafter "male victim" and "female victim"), who reported that they were sitting in a vehicle talking when an older white male walked up to the vehicle and struck its side.  The male victim got out of the vehicle and confronted the white male, at which point the white male retrieved a chrome or silver revolver and pointed it at the male victim.  The male victim then got back inside the vehicle.  The female victim relayed the same account of the events to Swanson.  Both victims also provided a detailed description of the white male assailant and stated

---

[3] Because the court has indicated where within the record the testimony of Swanson and Milstead at the motion to suppress hearing can be found, the court will not include pinpoint cites in the summary of their testimony unless a direct quote is included or the testimony is highly relevant to the issues at bar.  The court will do the same with respect to the trial testimony summarized *infra*.

that they observed him walk away from them and into a house that was only approximately 50 to 100 yards away. Swanson testified that the house the victims identified was at 18 Horn Street, and it was the only lit house on the street. He also stated he could hear music coming from the house.

Swanson testified that he approached the house at 18 Horn Street within approximately ten minutes of the time the male victim was assaulted, and he noted that the entrance to the house was very well lit and that the house's front door was open. Swanson could see the interior of the house, including what he described as its living room or front room, as well as a couch in that room and a white male sitting on the couch who exactly matched the description of the assailant that had just been provided by the male and female victims. He observed that the white male was "fidgeting with his hands" (doc. 55 at 14, 55–56). Swanson asked the white male—now known to be Defendant—if he would come outside and speak with him, and Defendant agreed to do so. Swanson noted that Defendant appeared to be somewhat intoxicated. As Defendant was exiting the house to speak with Swanson, Milstead was approaching the house with the victims. They both pointed to Defendant and screamed that he was the one who had hit their car and pointed the gun at the male victim. Swanson then began to handcuff Defendant, at which point Defendant began "hollering for Rocky" (*id.* at 16). Swanson stated it was evident that Defendant was yelling at someone who was inside the house, and this alarmed Swanson because the gun had not yet been accounted for (the gun was not on Defendant's person), and Swanson did not know if the other person in the house had the gun or whether that person posed a threat. Defendant repeatedly stated that he wanted to go inside the house to get Rocky; he also stated that the house was Rocky's house. Swanson testified it was clear that Defendant wanted him and Milstead to enter the house and find Rocky, and that at Defendant's request they did so. Swanson stated that Defendant entered the house first, followed by Swanson, who was followed by Milstead. They first walked through the front room of the house, then down a small hallway or archway, and then they came to a bedroom where Defendant stated Rocky could be located. Swanson saw an individual in that bedroom who was lying down and appeared to be sleeping. Swanson was confident that the person he observed lying down was not armed and had no intention to harm him, so he left the bedroom area and returned with Defendant to the front of the house. Milstead stayed at the bedroom area and attempted to rouse the sleeping individual—now known to be Rocky Burk ("Burk"). Milstead then returned to the front room with Burk, at which

point Milstead took Defendant outside to secure him in his patrol car, so he and Swanson could interview Burk without Defendant being present.   Before Milstead returned, Swanson saw Burk—who was groggy and smelled of alcohol—"plop[] down" in a chair that was immediately adjacent to, and within easy reach of, the sofa where Defendant had been sitting when Swanson first observed him in the house (*id*. at 25, 31, 54).   When Burk sat down, a chrome or nickel-plated revolver "popped right up" from the chair, and Swanson confiscated the gun (*id*. at 25–26, 30).   The officers later looked in the seat cushions and around the immediate area surrounding them, but they did not search any other areas of Burk's house.   Burk told the officers that the gun was his, that it should have been secured in his bedroom, that he did not know why the gun was in the chair, and that no one had permission to take his gun or move it from where it should have been secured in his bedroom.   Burk also stated he had been drinking earlier that day with Defendant, and when Defendant left his house he (Burk) went to bed.   Deputy Milstead testified to substantially the same facts relayed by Deputy Swanson.   He also clarified that he was outside with Defendant when Burk plopped down on the chair, the gun popped out, and Swanson retrieved the gun, and thus he did not witness these events.

Burk did not testify at the motion to suppress hearing, but he testified as a defense witness at Defendant's trial (doc. 57 at 67–84 (Burk's trial testimony)).   He testified that he resided at 18 Horn Street on November 28, 2008, and that he had resided there since 1995.   He stated that during the early morning hours of November 28, he woke up and saw five police officers—one female officer and four male officers—in his bedroom.   He did not know precisely what time it was or how long he had been sleeping, and he stated he had been drinking "very heavily that night" and did not recall "a lot of this" (*id*. at 68).   He testified that after he awoke, the officers advised him that his "friend [was] in trouble" and got him out of bed (*id*. at 67).   Burk then walked into the living room with the officers.   He stated he observed the officers searching the living room until they found a gun in a cushion in the easy chair next to his couch, and then the officers left.   He stated he did not recall sitting down on the chair and had a "vague memory" that he was standing near the hallway when the officers found the gun (*id*. at 74).   He stated he kept the gun in a night stand in his bedroom, he had no reason to believe that Defendant would know the gun was there, and he had never shown the gun to Defendant, though he recalled that Defendant was the one who helped him

to bed that evening and that his bed was right next to the night stand where he kept the gun.  When asked how confident he was that the officers found the gun during a search, as opposed their finding it when he sat on the chair and the gun popped out, he responded:  "Like I say, you know, it's embarrassing, but I was drinking very heavily, and it just—and I know better than to drink vodka because sometimes I black on it.  It all seems like a dream.  I'm just remembering bits and pieces of what happened." (*id*. at 73–74).  Similarly, Burk admitted on cross-examination that he did not "recall much about what happened" in the early morning hours of November 28 (*id*. at 75).  He was, however, surprised that his gun was found in the living room because he did not keep it there and did not put it there.  Finally, Burk noted that Defendant did not live with him, but at some point prior to November 28 Defendant's electricity was disconnected, and it was cold, so he allowed Defendant to "stay on the couch a couple of nights" (*id*. at 82).[4]

> • <u>Rocky Burk</u>

Defendant claims his trial counsel was ineffective for failing to interview Burk, call him as a witness at the suppression hearing, or re-raise the suppression issue following Burk's trial testimony.  None of these contentions entitles Defendant to relief.  The district court denied Defendant's motion to suppress because it found that Defendant lacked standing to contest the search conducted in Burk's residence (doc. 55 at 95).  Alternatively, the court concluded that if Defendant had standing, he clearly invited the officers to enter Burk's residence (*id*.).  The court also noted that a search did not actually occur, because—accidentally or fortuitously—the "gun happened to pop out" of the chair inside Burk's residence, but that even if a search had occurred it was incident to Defendant's arrest and, therefore, lawful (*id*. at 96).  Burk's trial testimony supports the

---

[4] In its response in opposition to Defendant's § 2255 motion, the Government states:

> In an interview with Mr. Burk by Special [ATF] Agent Williams, Mr. Burk was specifically asked if the defendant was living at 18 Horn Street, *and* more specifically, whether or not the defendant "had permission to spend the night" at 18 Horn Street on the evening of November 27, 2008 (the incident occurred at approximately 4:00 a.m. in the morning of November 28, 2008).  To both of these questions Mr. Burk responded unequivocally "no."

(doc. 71 at 6) (emphasis in original).  The Government, however, does not indicate where within the record evidence or documentation of this interview—or of Mr. Burk's statements to Agent Williams—may be found (*see id*.).  Although Agent Williams testified at Defendant's trial, he did not testify that he interviewed Mr. Burk or to any statements made by Mr. Burk (*see* doc. 57 at 56–64).

district court's conclusion that Defendant lacked standing to contest the search of Burk's residence. Defendant did not live with Burk on November 28 and had only, at some point prior to November 28, been allowed to stay on Burk's couch for "a couple of nights" when Defendant had no electricity. To be sure, Burk did not testify that Defendant was an invited overnight guest on the night of his arrest. To have standing to challenge the search of Burk's apartment, Defendant must establish that he had a reasonable expectation of privacy in Burk's house. Minnesota v. Olson, 495 U.S. 91, 95–97 (1990). That requires him to show both that he had a subjective expectation of privacy in Burk's house and that his expectation was objectively reasonable. Rakas v. Illinois, 439 U.S. 128, 143 & n.2 (1978); United States v. Donahue, 764 F.3d 293, 298–99 (3d Cir. 2014). As the Supreme Court has explained, a person who lacks the requisite expectation of privacy and is "aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas, 439 U.S. at 134. That Defendant previously had permission to stay on Burk's couch for "a couple of nights" does not create a reasonable expectation of privacy in Burk's house on the night of his arrest and, to the extent Defendant subjectively believed he had such an expectation of privacy, his belief was not reasonable. Moreover, as the district court found, even if Defendant had standing to challenge the search, he invited the officers into Burk's residence, and Burk could testify to no facts that would undermine the officers' testimony about their being invited in the residence by Defendant. As noted *supra*, while Defendant was yelling for Burk and asking the officers to take him inside the house so he could locate Burk, Burk was soundly sleeping (or passed out) in his bedroom. Thus, Burk had no knowledge of the events that precipitated the officers' appearing at his bedroom door. Moreover, to the extent Defendant contends Burk could have impeached Swanson's testimony about the gun "popping" out of the chair by testifying that the officers found the gun during a search, Burk was highly intoxicated and admitted he could not remember most of what occurred in his house and had only a "vague memory" of the crucial events surrounding the seizure of the gun. Also, his testimony would have conflicted with that provided by Officers Swanson and Milstead (not only with regard to the circumstances surrounding the seizure of the gun but also with respect to the number of officers inside his residence), neither of whom had only a vague memory of the critical events. There is, therefore, no substantial likelihood

that the district court would have granted the motion to suppress had counsel re-raised the motion following Burk's trial testimony or presented his testimony at the hearing on the motion. Finally, even if the officers had conducted a search and found the gun during the search as Burk vaguely recalled during his testimony, the district court concluded that such a search was incident to Defendant's arrest. Thus, with respect to Burk, there is nothing additional counsel could have done that would have changed the district court's multifaceted ruling on the motion to suppress. Because there is no prejudice to Defendant, trial counsel was not constitutionally ineffective for failing to interview Burk, call him as a witness at the suppression hearing, or re-raise the suppression issue following Burk's trial testimony.

- Cross-Examination

Defendant alleges that his trial counsel failed to research the limits of cross-examination with respect to Defendant testifying at the hearing on his motion to suppress, or correctly explain to Defendant whether his hearing testimony could have been introduced at trial. Initially, Defendant's allegations are broad, conclusory, and largely devoid of factual support. For example, Defendant does not definitively state  he would have testified had counsel discussed these issues with him, and he has not described with any specificity what his testimony would have been.[5]  Correspondingly, Defendant has not shown that—but for counsel's deficiencies—he would have prevailed on the motion to suppress, and the instant claim could be denied on this basis alone. However, even if this court accepts Defendant's conclusory allegations as true, and assumes Defendant would have testified had counsel fully and accurately discussed these issues with him, there still is no reasonable possibility that Defendant's testimony would have changed the court's ruling on the merits. The district court primarily found that Defendant lacked standing to challenge the search, so Defendant's testimony would have been of little consequence given that the court relied on Burk's statements

---

[5] Defendant suggests that had he testified at the suppression hearing he might have been able to establish standing to contest the search because he claims he had been staying at Burk's residence "for a couple of weeks prior to [his] arrest" (*see* doc. 69 at 18–20 & Exh. A). However, Mr. Burk's statements to the officers at the time of Defendant's arrest contradict what Defendant now says. Similarly, to the extent Mr. Burk advised Agent Williams that Defendant was not living at 18 Horn Street, and he did not have permission to spend the night at 18 Horn Street on the evening of November 27, 2008 (*see* n.4, *supra*), the Government would undoubtedly have introduced Mr. Burk's statements to Agent Williams to impeach any testimony by Defendant that he resided with Mr. Burk at the time of his arrest.

to the officers to conclude that Defendant lacked standing.  Additionally, even if Defendant had testified and established standing to contest the search, the district court alternatively found that he invited the officers into Burk's residence.  Similarly, Defendant's testimony could not have undermined another of the court's alternative findings—that no search actually occurred because the gun popped out of the chair when Burk plopped down on it—because Defendant had already been removed from the residence when this occurred and thus could not testify to any facts that would have contradicted Swanson's testimony as to how the gun was found.[6]  Therefore, Defendant has not shown a Sixth Amendment violation because he has not shown that he was prejudiced by counsel's alleged inadequate research regarding the limits of cross-examination and admissibility of Defendant's suppression hearing testimony.  Stated differently, if Defendant had been properly counseled regarding the ramifications of testifying at the suppression hearing, and Defendant chose to testify after being properly advised, Defendant's testimony would not have changed the result of the proceeding.

- ●   Plea Agreement and Plea-Related Discussions

As with the preceding claim, the sub-claims Defendant raises here lack sufficient factual support.  Defendant first contends his counsel failed to convey a plea agreement to him "if" a plea agreement existed.  He has not established that a plea agreement in fact existed or that he would have entered a plea of guilty if a plea agreement existed.  Regardless, a plea to the charged offense would not have affected the sentence Defendant received.  If Defendant had entered a guilty plea, he would likely have been awarded a three-level reduction for acceptance of responsibility, resulting in a total offense level of 27 (instead of 30) (*see* Pre-sentence Investigation Report ("PSR"), ¶¶ 26, 27).[7]  His criminal history category—VI—would not have changed, and his guidelines range would have been lowered to 130–162 months (instead of 168–210 months), which range is still above the statutory maximum sentence of 120 months, the sentence Defendant received.  As explained more

---

[6] Defendant admits—and the officers' testimony confirms—that Defendant had been placed in a patrol car before Burk entered the living room; thus, Defendant was not present when the gun was found (*see* doc. 69 at 9–10).

[7] The PSR is not part of the court's electronic docket, but the undersigned obtained and reviewed the PSR in preparing this recommendation.

fully *infra* in the discussion of Ground Four, the district court at sentencing expressed its belief that Defendant's sentence of 120 months was unreasonably <u>low</u>; there is, therefore, no reasonable possibility that Defendant would have received a lower sentence had he entered a plea of guilty.

Defendant also contends that AFPD Lockhart failed to explain to him that he could have entered a guilty plea and preserved the right to appeal the district court's denial of his motion to suppress. Again, Defendant has made only conclusory allegations, devoid of factual support. Nevertheless, it matters not whether counsel advised him that he could enter a plea and preserve his right to appeal the district court's ruling on his motion to suppress. Had Defendant pleaded guilty, there is no reasonable possibility that he would have prevailed on an appeal challenging the district court's well-supported and multifaceted ruling on the motion to suppress. Correspondingly, there is no prejudice.

        D.    <u>Ground Four</u>. "Sentencing counsel was constitutionally ineffective for failing to contest the sentencing guideline calculation which resulted in a higher sentence and a more stringent review on appeal."

The PSR set Defendant's base offense level at 24 under U.S.S.G. § 2K2.1(a)(2), based on a determination that he had two prior convictions for crimes of violence as defined by U.S.S.G. § 4B1.2(a), namely, felony battery in violation of Fla. Stat. § 784.03 in 2006, and attempted first degree assault in violation of Ala. Code §§ 13A–6–20(a) and 13A–4–2(a) in 1997 (*see* PSR, ¶¶ 17, 43, 56). Defendant received a two-level enhancement because the firearm he possessed was stolen and a four-level enhancement because he had used or possessed a firearm in connection with the aggravated assault that occurred on the night of his arrest (*id*., ¶¶ 18, 19, 62; *see also* U.S.S.G. §§ 2K2.1(b)(4)(A) (stolen firearm) & 2K2.1(b)(6) (possession of a firearm in connection with another felony offense)). Based on his total offense level of 30 and his criminal history category of VI, Defendant's guidelines range was 168 to 210-months imprisonment. However, because the statutory maximum term of 120-months imprisonment was less than his applicable guidelines range, 120 months became the guidelines sentence under U.S.S.G. § 5G1.1(a).

Defendant contends that his trial counsel performed deficiently because he failed to object to the base offense level of 24 on the ground that the crimes identified as crimes of violence were not such crimes under § 4B1.2(a). He further contends that counsel's failure to object led to a "more

stringent review" (i.e., plain error review) on direct appeal of his conviction and sentence instead of a less stringent, de novo review.[8]

Defendant is correct in noting that his counsel's failure to object resulted in plain error review of the substantive claim on appeal. But Defendant has not established—and the record does not support a finding that—Defendant was prejudiced by the more stringent standard of review.

In conducting its plain error review, the Eleventh Circuit determined that Defendant's claim failed on the third Gallego prong, because—assuming for the sake of discussion there was error and it was plain—the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. The court explained:

> In Pantle's case, the maximum sentence permitted by statute is 120 months. Because his guidelines range exceeded the statutory maximum sentence, the statutory maximum became his guidelines sentence. If Pantle were to be resentenced without counting either prior conviction as a crime of violence, his base offense level would be 14 (instead of 24). See U.S.S.G. § 2K2.1(a)(6). Applying the same upward adjustments as before, Pantle's adjusted offense level would be 20 (instead of 30). Combined with his 23 criminal history points, which yield a criminal history category of VI, Pantle's guidelines range would be 70 to 87 months (instead of 168 to 210 months). Although his guidelines range would be different, he could still receive the same 120-month sentence because § 3553(a) would permit the district court to vary upward to that sentence. Unlike the appellants in [United States v.] Antonietti, [86 F.3d 206 (11th Cir. 1996)], we do not know that Pantle would not have received the same sentence without the (assumed) error.

United States v. Pantle, 637 F.3d 1172, 1178 (11th Cir. 2011). In contrasting Defendant's case with the cases at issue in Antonietti, the Eleventh Circuit noted that here the district court "expressly indicated that it believed the 120-month sentence was not long enough but could not go higher because that was the statutory maximum." Id.[9]

---

[8] To correct an error under plain error review, "(1) there must be error; (2) the error must be plain; (3) the error must affect the appellant's substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Gallego, 247 F.3d 1191, 1196 (11th Cir. 2001) (quotation marks and alteration omitted). "In order to be plain enough for the plain error rule, an asserted error must be clear from the plain meaning of a statute or constitutional provision, or from a holding of the Supreme Court or [the Eleventh Circuit]." United States v. Rodriguez, 627 F.3d 1372, 1381 (11th Cir. 2010). But it is enough that the error was plainly established under the law at the time of appellate review. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

[9] The transcript of the sentencing hearing confirms that the district court indeed stated that it did not believe the sentence of 120 months was reasonable, but noted it was the maximum permitted (doc. 58 at 3–4).

For the same reason Defendant's substantive claim failed on appeal, the instant claim—couched here in terms of ineffective assistance of counsel—must also fail.  Even if Defendant's counsel performed deficiently at sentencing, there is no prejudice.  It is clear from the record of these proceedings that regardless of whether the proper guidelines range was 70–87 months, Defendant would have been sentenced to the maximum term of incarceration for the crime of conviction: 120 months.  Similarly, the undersigned finds that Defendant was not prejudiced by the standard of review employed by the Eleventh Circuit.  Assuming for the sake of argument only, that de novo review on appeal would have resulted in a remand for resentencing, it is clear from the district court's comments at sentencing that Defendant would have received the same sentence upon resentencing.  Thus, because Defendant has failed to establish both prongs of the <u>Strickland</u> standard, he is not entitled to relief on this claim.

      E.    <u>Ground Five</u>.  "Appellate counsel was constitutionally ineffective for failing to cite directly controlling precedent, for initially filing an <u>Anders</u> brief, and for failing to establsih [sic] that a lesser recommended guideline was sufficient to warrant reversal."

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985).  To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.  <u>Shere v. Sec'y Fla. Dep't of Corr.</u>, 537 F.3d 1304, 1310 (11th Cir. 2008); *see also* <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland</u>, 466 U.S. at 687).  To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court may consider the merits of the issues the defendant alleges counsel was derelict in not raising on appeal.  <u>Miller v. Dugger</u>, 858 F.2d 1536, 1538 (11th Cir. 1988); <u>Reutter v. Secretary for Dept. of Corrections</u>, 232 F. App'x 914, 917 (11th Cir. 2007) (determining that counsel's decision not to raise a particular argument on appeal, in light of his having raised several important claims, was likely a strategic decision to "winnow out weaker arguments").  Of course, appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.  <u>Brown v. United States</u>, 720 F.3d 1316, 1335 (11th Cir.

2013); Shere, 537 F.3d at 1311; Nyhuis, 211 F.3d at 1344 (citing Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).

On November 23, 2009, Defendant's appellate counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court. Appellate counsel simultaneously moved to withdraw and asked that Defendant be permitted to file a brief on his own behalf if he so desired. On February 26, 2010, the Eleventh Circuit denied the motion to withdraw and directed counsel to renew her motion under Anders or, alternatively, file a merits brief. Counsel then filed an amended Anders brief, but she subsequently moved to withdraw the amended brief. Counsel was permitted to withdraw the amended Anders brief, and thereafter she filed a merits brief on Defendant's behalf. Therefore, even if appellate counsel performed ineffectively by initially filing Anders briefs, there is no prejudice to Defendant because counsel ultimately filed a brief on the merits.

The court thus considers Defendant's contentions that appellate counsel performed ineffectively by failing to: (1) "argue on appeal that a lesser recommended guideline was sufficient to warrant reversal"; (2) adequately or successfully argue that plain error occurred at sentencing; and (3) "appeal the illegal search and seizure issue with emphasis on the new testimony presented at trial" (doc. 69 at 13, 27–30).

Counsel presented one issue on appeal, namely, that Defendant "was incorrectly scored 10 levels too high based on the erroneous classification of two prior convictions as 'crimes of violence' under USSG § 2K2.1(a)(2)."[10] Initially, the issue presented by counsel on appeal encompasses the claim that Defendant faults counsel for failing to raise (i.e., "that a lesser recommended guideline was sufficient to warrant reversal"). To be sure, appellate counsel argued that the guidelines range determined at sentencing, 168–210 months, was erroneous and that the guidelines range should have been 70–87 months; she asked that Defendant's sentence be vacated; and she asked that Defendant's case be remanded for resentencing with a corrected PSR that reflected an adjusted offense level of 20, instead of 30, and a corresponding guidelines range of 70–87 months. Additionally, as to

---

[10] The appellate record is not part of the court's electronic docket, but the undersigned obtained and reviewed the pertinent filings in preparing this recommendation.

Defendant's contention that appellate counsel failed to adequately argue that the guidelines error was "plain error" warranting reversal (*see* doc. 69 at 28–30), he has failed to establish prejudice. In affirming Defendant's conviction and sentence, the Eleventh Circuit assumed for the sake of discussion that the error at sentencing was plain but denied relief.  More specifically, the court stated, "Even if we assume that the district court erred in counting those convictions as crimes of violence, and even if we assume that any error in doing so was plain, Pantle's claim still fails because he cannot satisfy the third prong of the plain error standard."  Pantle, 637 F.3d at 1177. Thus, had counsel successfully convinced the court the error was plain—or, as Defendant phrases the issue, had counsel not performed ineffectively by failing to adequately argue that the error was plain—the outcome of Defendant's appeal would have been the same since, in affirming Defendant's conviction and sentence, the court *assumed* the error was plain.  There is, therefore, no prejudice.

Finally, appellate counsel did not perform ineffectively by failing "to appeal the illegal search and seizure issue with emphasis on the new testimony presented at trial."  As previously explained, the trial court denied the motion to suppress on multiple alternative grounds.  Appellate counsel had no meritorious grounds on which to appeal the court's ruling, whether based on the testimony adduced at the suppression hearing or at trial, or both (as explained *supra* in the discussion of Grounds Two and Three).  Therefore, she did not perform ineffectively by failing to challenge the denial of the motion to suppress.

F.     Ground Six.  "The cumulative effect of counsel's errors is sufficient to establish ineffective assistance of counsel within the meaning of the Sixth Amendment."

Defendant's claim of cumulative error can be quickly dispatched here.  Cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  *See* United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (concluding, in a direct appeal, that where no individual errors have been demonstrated, no cumulative errors can exist).  Thus, Defendant must show error with respect to at least two of his individual claims.  As discussed above, Defendant has not shown error of a constitutional dimension with respect to any of the alleged errors of trial or appellate counsel.  Therefore, he is not entitled to relief on this "cumulative error" claim.  *Id*.; *see also, e.g.*, United States v. Moye, 951 F.2d 59, 63 n.7 (5th Cir.

1992) (direct appeal) ("Because we find no merit to any of Moye's arguments of error, his claim of *cumulative* error must also fail."); <u>Miller v. Johnson</u>, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (§ 2254 petition) ("Miller further argues that the 'cumulative effect of numerous errors of counsel rendered counsel's performance inadequate.' As set forth above, Miller has not demonstrated error by trial counsel; thus, by definition, Miller has not demonstrated that cumulative error of counsel deprived him of a fair trial.") (citing <u>Yohey v. Collins</u>, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, § 2254 petitioner "has presented nothing to cumulate")); <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because "[t]wenty times zero equals zero."); <u>Johnston v. Tucker</u>, No. 3:10cv538/LAC/MD, 2011 WL 5008355, at *14 (N.D. Fla. Sept. 16, 2011) (§ 2254) ("Mr. Johnston raised his cumulative error argument in his motion for post-conviction relief. The state court correctly concluded that the individual claims did not show ineffective assistance of counsel; therefore, there is no error upon which to base a cumulative error claim . . . .") (citing <u>Parker v. State</u>, 904 So. 2d 370, 380 (Fla. 2005) ("where the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails")), *report & recommendation adopted*, 2011 WL 5008364 (N.D. Fla. Oct. 20, 2011).

       G.    <u>Ground Seven</u>. "The petitioner's [sic] sentence is fundamentally unfair in violation of the Fifth and and [sic] Fourteenth Amendment[s] of the United States Constitution in light of the Supreme Court's recent decision in <u>Johnson [v. United States, 130 S. Ct. 1265 (2010)]</u> which makes it clear that his prior assault convictions are not crimes of violence as that term is defined under §2K2.1 and §4Bl.2."

In undergoing the "crime of violence" analysis under the guidelines, courts should first identify the specific crime at issue, generally using a categorical approach. <u>United States v. Alexander</u>, 609 F.3d 1250, 1253 (11th Cir. 2010). However, as the Supreme Court held in <u>Johnson</u>:

When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the 'modified categorical approach' that we have approved . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea

agreements, transcripts of plea colloquies, findings of fact and conclusions of law
from a bench trial, and jury instructions and verdict forms.

Johnson, 130 S. Ct. at 1273.  *See also* United States v. Palomino Garcia, 606 F.3d 1317, 1336 (11th
Cir. 2010) ("when the law under which the defendant has been convicted contains different statutory
phrases—some of which [qualify as crimes of violence] and some of which do not—the judgment
is ambiguous and we apply a 'modified categorical approach'") (citing Johnson, 130 S. Ct. at 1273).

Here, on direct appeal, the Eleventh Circuit specifically considered the applicability of
Johnson, following which it assumed that a plain error occurred at sentencing.  *See* Pantle, 637 F.3d
at 1175, 1177.  It then upheld Defendant's conviction and sentence.  Thus, though the claim raised
here is phrased in terms of constitutional violations under the Fifth and Fourteenth Amendments,
it is essentially a claim that has already been resolved on direct appeal, and thus it is not actionable
in this § 2255 proceeding.  Furthermore, to the extent the claim is actionable here, Plaintiff is
entitled to no relief in light of district court's clear expression of its belief that the maximum
sentence of 120 months was too low, and thus regardless of the guidelines range Defendant would
have been sentenced to 120 months.  In short, Defendant has not shown—and the record clearly does
not support a finding—that the district court imposed a sentence that (1) violated the Constitution
or laws of the United States, (2) exceeded the court's jurisdiction, (3) exceeded the maximum
authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a).

Lastly, in a supplemental notice submitted by Defendant in late July 2015 (doc. 78),
Defendant contends he is entitled to relief pursuant to the Supreme Court's recent decision in
Johnson v. United States, 135 S. Ct. 2551 (2015), and he argues he is serving an unconstitutional
sentence.  In the more recent Johnson case, the Supreme Court held that "imposing an increased
sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the
Constitution's guarantee of due process."  *Id*. at 2563.  Here, however, Defendant was not sentenced
under the ACCA, and thus the Supreme Court's recent decision in Johnson has no impact on this
case.[11]

---

[11] What is more, even if the 2015 Johnson decision is construed as applicable here—such that Defendant's
offense level should not have been increased by ten levels under U.S.S.G. § 2K2.1(a)(2)—the end result would be a
guidelines range of 70–87 months.  But as repeatedly explained *supra*, Defendant's sentence would have nevertheless
been the same.  In short, Defendant's sentence is not fundamentally unfair or otherwise unconstitutional in light of the

IV.    CONCLUSION

For the reasons set forth above, the court concludes Defendant has failed to meet his burden of establishing that his counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland, 466 U.S. at 686.  Defendant has also failed to state any other claim that entitles him to relief.  Because the record conclusively shows that Defendant is entitled to no relief, the court therefore recommends that Defendant's motion to vacate pursuant to 28 U.S.C. § 2255 be denied, without an evidentiary hearing.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2255 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

That the motion to vacate, set aside, or correct sentence (doc. 69)  be **DENIED**.

**DONE AND ORDERED** this 11th day of August 2015.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

2015 Johnson decision, the 2010 Johnson decision, or any other factor.

Case Nos.: 3:09cr15/LAC/EMT; 3:12cv280/LAC/EMT

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**